ATTORNEY FOR APPELLANT
Michael R. Fisher
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Steve Carter
Attorney General of Indiana

Maureen Ann Bartolo
Deputy Attorney General
Indianapolis, Indiana

# In the
# Indiana Supreme Court

No. 49S02-0506-CR-285

STEVEN V. WRIGHT,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

Appeal from the Marion Superior Court, 49G01-0211-FB-276086
The Honorable Tanya Walton Pratt, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 49A02-0405-CR-405

**June 22, 2005**

**Shepard, Chief Justice.**

1

Even in the substantial flow of cases reflecting child abuse, Steven V. Wright's appeal stands out. Wright was the stay-at-home caregiver for four very young children, whom he battered and neglected over a substantial period of time. In sentencing Wright on six counts, the trial court ordered enhanced sentences based on aggravating circumstances we now know must be admitted or proven to a jury based on Blakely v. Washington. We remand for a new sentencing hearing.

When the Marion County Sheriff's Department went to Wright's home on September 2, 2001, to investigate the concern of an alarmed relative who had recently seen the children, it was not the first indication that Wright was abusing and neglecting the children in his care. In April 1999, Ma. W., then five months old, arrived at the hospital with a fever, but medical examination revealed she also had seven right rib fractures and two left rib fractures and a healing fracture in her right femur. (Tr. at 121.) Wright told investigating officers that the leg was broken when an uncle had lost his grip while holding the child and grabbed her to prevent her from falling. (Ex. at 16.) At that time, Wright had no explanation for the broken ribs, except to suggest that he had, perhaps, held Ma. W. too tightly. (Ex. at 24.) At trial, however, Wright suggested the possibility that both the ribs and femur were broken when the uncle grabbed his daughter to prevent her from falling. (Tr. at 581-82.)

The scene observed by the sheriff's deputies thirty months later was a chilling one. Two twins lying on a couch presented such a shocking appearance that the officers immediately called an ambulance. (Tr. at 54.) The children's heads were enlarged and swollen; their bodies were malnourished and thin; their eyes were popping out of their heads. (Tr. 38, 70). Medical examination showed that each child had suffered at least seventeen fractures on various parts of their bodies. (Tr. 129-40; 141-50.) At seven months of age, they weighed barely ten pounds apiece. (Tr. 379, 389.) The record is replete with details of brain injury and other damage to the twins. (See, e.g. Tr. 660.) Upstairs, the deputies found Ma. W. and her sister, ages three and two, in somewhat less distressful condition.

The State filed two counts of neglect of a dependent, Ind. Code Ann. § 35-46-1-4(b)(2) (West 2004), and six counts of battery, Ind. Code Ann. § 35-42-2-1(a)(4) (West 2004), all class B felonies. Medical experts testified at trial that the injuries to the children were the product of intentional acts rather than falls or other accidents. (See, e.g. Tr. at 150-51.) Wright testified that he had not taken the children for medical attention because there was no medical insurance, although Wright's wife, the children's mother, worked for the United States Postal Service, and it provided medical insurance. (Tr. at 588-91.)

The trial court found Wright guilty on both neglect counts and on four of the battery charges. It found a considerable list of aggravating circumstances, including: Wright's role as a primary caregiver, the obvious need for medical attention that the children's very appearance presented, Wright's practice of isolating the children from other adults who might render aid, the severity of the injuries inflicted, and the medical and law enforcement testimony to the effect that this was among the most severe case of child abuse they had ever encountered. (Tr. at 677-81.) As a mitigating circumstance, the court found that Wright had no previous criminal record. (Tr. at 680.)

The trial court sentenced Wright to fifteen years on every count, five years more than the standard term for class B felonies. Ind. Code Ann. § 35-50-2-5 (West 2004). It ordered three of the fifteen year terms served consecutively and the remaining three terms concurrent to the consecutive sentence. In effect, Wright received a forty-five year executed sentence.

Wright appealed, challenging the sufficiency of the evidence and the appropriateness of the sentence. The Court of Appeals affirmed. Wright v. State, No. 49A02-0405-CR-405 (Ind. Ct. App. Dec. 6, 2004) vacated. We grant transfer and summarily affirm their rejection of his contentions about the adequacy of the evidence. Ind. Appellate Rule 58(A).

3

The sentencing requires further attention. Examining Indiana's sentencing scheme under the recent decision in <u>Blakely v. Washington</u>, 542 U.S. __, 124 S.Ct. 2531 (2004), we recently held that when a trial court adds years beyond the fixed, standard term provided in our code, the aggravating circumstances identified for that enhancement must be either proved beyond a reasonable doubt, admitted by the defendant, or represent prior criminal convictions. <u>Smylie v. State</u>, 823 N.E.2d 679, 682-83 (Ind. 2005).

Wright admitted at trial to taking care of the children for extended periods of time while his wife was at work, and this admission is sufficient to make the "primary caregiver" aggravator permissible. (Tr. at 584-85.) The great weight of the aggravating circumstances found, however, was plainly with the remainder of the findings. Grievous and obvious as the remaining aggravating circumstances in this case are, they do not fit under any of the categories identified in <u>Blakely</u> and noted in <u>Smylie</u> and cannot support the imposition of the enhanced sentences.

They are, however, more than adequate to sustain consecutive counts. A trial judge may find facts and render conclusions under Indiana's sentencing scheme without running afoul of the Sixth Amendment as explained in <u>Blakely</u>. <u>Smylie</u>, 823 N.E.2d at 686.

We thus affirm the convictions. We affirm the trial court's finding that the aggravating and mitigating circumstances are adequate to sustain consecutive sentences. We remand for a new sentencing proceeding. The State may elect to prove aggravating circumstances to a jury or it may accept standard terms on each count and ask the trial court to reassess how many and which punishments should be served consecutively.

**Dickson, Sullivan, Boehm, Rucker, JJ., concur**